# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF MISSISSIPPI
# GREENVILLE DIVISION

| | |
|---|---|
| **ALICE LOGGINS HILL, as Administratrix of the** <br> **Estate of DEBBIE DENISE LOGGINS, deceased,** <br> v. | **PLAINTIFF** <br><br> **CAUSE NO: 4:06CV104** |
| **CARROLL COUNTY, MISSISSIPPI; CARROLL** <br> **COUNTY SHERIFF'S DEPARTMENT, a division** <br> **of Carroll County, Mississippi, ET AL.** | **DEFENDANTS** |

## MEMORANDUM OPINION GRANTING SUMMARY JUDGMENT AS TO CARROLL COUNTY, MISSISSIPPI

This matter comes before the Court on Defendant Carroll County, Mississippi's Motion for Summary Judgment, based on qualified immunity. The Court finds the motion is **GRANTED**. After considering submitted briefs, authorities, and memoranda, the Court finds as follows:

### *BACKGROUND*

On September 17, 2005, at 5:43 a.m., the Carroll County Sheriff's Department received a report from Bill and Brenda Wood that two unknown women were fighting in their garage. The dispatcher sent Chief Deputy Michael Spellman and Deputy David Mims to the scene. Spellman arrived at the scene and found that Debbie Loggins had Patricia McChristian in a headlock. Spellman advised the women to put their hands up. Loggins, a 33-year-old female who was five feet four inches tall and weighed approximately 220 pounds, raised her left arm but continued the headlock maneuver with her other arm. Spellman then approached the women and attempted to handcuff Loggins' left arm. It is undisputed that Loggins began to assault Spellman by striking him with a flashlight he had previously dropped. Loggins struck him on the head, arm, and shoulder. Spellman was able to place handcuffs on Loggins behind her back as she continued to resist and struggle.

It is further undisputed that Loggins continued to kick, shout, curse loudly, and act wildly. Spellman bound her legs with a pair of restraints. Notwithstanding the cuffs on her arms and legs, Loggins continued to struggle, and Spellman was unable to place her in the vehicle.

Deputy Mims arrived and attempted to help Spellman place the Plaintiff in the squad car. The two men were unable to force Loggins into the vehicle due to her continued kicking and resistance. The officers then decided to connect the handcuffs to the leg restraints behind Loggins' back with an additional pair of handcuffs. Thus, despite her continued struggle, the officers were able to place her in the squad car. Mims drove the vehicle with Loggins in the rear seat, while Spellman followed. The officers then transferred Loggins to Deputy Charles Jones' squad car. She continued to struggle as they placed her on her stomach in the back seat of Jones' car.

Jones testified that the struggle was so great that the car shook back and forth. By himself, Deputy Jones drove Loggins approximately twenty-nine miles from Carrollton to the Grenada County Jail. Furthermore, Jones testified he monitored Loggins during the entire ride.

Upon returning to the vehicle, one of the officers observed the Plaintiff to be unresponsive and without a pulse. The jailers administered cardiopulmonary resuscitation (CPR) until the Emergency Medical Technicians arrived. She was pronounced dead on arrival at the hospital. The medical records noted that her temperature was 107.5 degrees Fahrenheit. A Final Report Autopsy performed by Steven T. Hayne, M.D., concluded that the cause of death was hyperthermia (advanced heat stroke). Further, Dr. Hayne concluded that the underlying cause of death was "excessive exertional activity with changes of physical exhaustion" and that the manner of death was accidental.

Subsequently, Alice Loggins Hill, the administratrix of the estate of Debbie Loggins, deceased, filed the instant 42 U.S.C. § 1983 action against Carroll County, Mississippi; the Carroll County Sheriff's Department (a division of Carroll County, Mississippi); Donald Gray, the Sheriff of Carroll County; and the three officers, Michael Spellman, David Mims, and Charles Jones. The Plaintiff alleges a violation of Debbie Loggins' Fourth Amendment rights against unreasonable search and seizure. Specifically, the Plaintiff contends that the Defendant is liable because Loggins was illegally "hog-tied" which resulted in her death. Particularly, Plaintiff argues that hog-tying Loggins and placing her on her stomach in the back of the squad car caused fatal positional asphyxia. Further, Plaintiff alleges that her rights were violated by the Defendant failing to monitor her during the ride to the jail. Lastly, Plaintiff avers that Defendant failed to adequately train its employees.

Previously on December 28, 2006, this Court granted Spellman, Mims, and Jones', in their individual capacity, motion to dismiss, or for summary judgment, based on the defense of qualified immunity. On October 11, 2007, Defendant Carroll County, Mississippi, filed this Motion for Summary Judgment asserting the defense of qualified immunity.

## *STANDARD OF REVIEW*

To be entitled to summary judgment, a party must "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). The movant has the initial burden of proving that no genuine issue of material fact exists. Celotex Corp. v. Catrett, 477 U.S. 317, 325, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). Rule 56(c) compels the court to grant summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Id. at 322, 106 S. Ct. 2548.

Before finding that no genuine issue for trial exists, the Court must first be satisfied that no reasonable trier of fact could find for the non-movant. Matsushita Elec. Indus. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986).

Where "the summary judgment evidence establishes that one of the essential elements of the plaintiff's cause of action does not exist as a matter of law, . . . all other contested issues of fact are rendered immaterial. See Celotex, 477 U.S. at 323, 106 S. Ct. 2548." Topalian v. Ehrman, 954 F.2d 1125, 1138 (5th Cir. 1992). In reviewing the motion, the Court must view the evidence submitted in light most favorable to the non-moving party. McPherson v. Rankin, 736 F.2d 175, 178 (5th Cir. 1984).

**1983 Claim**

42 U.S.C. § 1983 states,

Every person who, under the color of any statute, ordinance, regulation, custom, or usage, of any State…subjects, or causes to be subjected, any citizen of the United States…to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law…

42 U.S.C. § 1983. To maintain a successful 1983 action, the Plaintiff must prove there has been (1) a deprivation of a federal right (2) that occurred under color of state law, which (3) was caused by a state actor. Victoria W. v. Larpenter, 369 F.3d 475, 482 (5th Cir. 2004); Phillips v. Vandygriff, 711 F.2d 1217, 1221 (5th Cir. 1983). Section 1983 alone does not create substantive rights. Dismukes v. Hackathorn, 802 F. Supp. 1142, 1444 (N.D. Miss. 1992). Rather, Section 1983 creates a remedy for violation of federal, constitutional, or statutory rights. Cousin v. Small, 325 F.3d 627, 631 (5th Cir. 2003). Section 1983 was designed to deter state and government actors from abusing their official positions by depriving citizens of their constitutionally protected rights and provides redress for any such deprivation. Johnston v. Lucas, 786 F.2d 1254, 1257 (5th Cir. 1986). Mere assertions that a defendant violated a

plaintiff's rights are insufficient to maintain a Section 1983 claim. Dismukes, 802 F. Supp. at 1444 (citing Easterling v. Glennville, 694 F. Supp. 911, 917 (S.D. Ga. 1986)).

A municipality, such as Carroll County, will be held liable if the Plaintiff alleges a violation of constitutionally protected rights inflicted pursuant to an official policy or custom. McKinney v. Irving Indep. Sch. Dist., 309 F.3d 308, 313 (5th Cir. 2002). The plaintiff must demonstrate that a constitutional deprivation was suffered, that the deprivation occurred pursuant to a custom or policy of the county, and that there is a direct causal link between the custom or policy and the deprivation. See Monell v. Dep't of Soc. Servs., 436 U.S. 658, 691, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978). In order to carry this heavy burden, "the plaintiff must generally demonstrate at least a pattern of similar violations." Id. Moreover, actions lodged against individuals in their official capacity are essentially against the municipality. Hafer v. Melo, 502 U.S. 21, 25, 112 S. Ct. 358, 116 L. Ed. 2d 301 (1991); Brooks v. George County, Miss., 84 F.3d 157, 165 (5th Cir. 1996). Specifically, the Fifth Circuit in Webster v. Houston, stated an official policy is

1. A policy statement ordinance, regulation, or decision that is officially adopted and promulgated by the municipality's lawmaking officers or by an official to whom the lawmakers have delegated policymaking authority; or
2. A persistent widespread practice of city officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents municipal policy. Actual or constructive knowledge of such custom must be attributable to the governing body of the municipality or to an official to whom that body had delegated policy making authority. Actions of officers or employees of a municipality do not render the municipality liable under Section 1983 unless they execute official policy as above defined.

735 F.2d 838, 841 (5th Cir. 1984).

In sum, proof of an official policy or custom can be proved in several ways, including: (1) formally adopted policies; (2) informal customs or practices; (3) a custom or policy of

5

inadequate training, supervision, discipline, screening, or hiring; or (4) a single act by an official with final policymaking authority. See Monell, 436 U.S. at 694, 98 S. Ct. 2018.

*DISCUSSION*

**Constitutional Violation**

The Court will first evaluate whether a constitutional violation has occurred. Plaintiff alleges that the Defendant violated the Plaintiff's Fourth Amendment right to be free from unreasonable search and seizure, i.e. that excessive force was used. In order to succeed in showing that a violation existed, Plaintiff must show "(1) an injury (2) which resulted directly and only from the use of force that was clearly excessive to the need and (3) the force used was objectively unreasonable." Hathaway v. Bazany, 507 F.3d 312, 320 (5th Cir. 2007) (quoting Williams v. Bramer, 180 F.3d 699, 703 (5th Cir. 1999)). In analyzing whether a constitutional right was violated, the Court will look to the totality of the circumstances, "including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." Lee v. Ferraro, 284 F.3d 1188, 1194 (11th Cir. 2002). In sum, the Court must analyze whether the officer's actions are objectively reasonable in the light of the facts and circumstances with which they are confronted. Graham v. Connor, 490 U.S. 386, 396, 109 S. Ct. 1865, 104 L. Ed. 2d 443 (1989).

The Court judges the officers' acts from the perspective of a reasonable officer on the scene and not "the 20/20 vision of hindsight." Gutierrez v. City of San Antonio, 139 F.3d 441, 447 (5th Cir. 1998). Further, the Court should "consider the fact that police officers are often forced to make split second judgments – in circumstances that are tense, uncertain, and rapidly evolving – about the amount of force that is necessary in a particular situation. Thus, [e]ven law

enforcement official who reasonably but mistakenly [use excessive force] are entitled to immunity. Gutierrez, 139 F.3d at 447 (citations omitted).

It is undisputed that the Plaintiff was injured, and therefore, the Plaintiff satisfies the first element of the constitutional claim. As to the second and third elements of the alleged constitutional claim, both parties rely on Gutierrez to support their respective arguments. Gutierrez involved an individual who was arrested, hogtied, and placed in the back of a police car. Gutierrez, 139 F.3d at 442-44. The Plaintiff's evidence was based on a 1991 San Diego Task Force Study, conducted by Donald T. Reay. See Donald T. Reay, et al., Effects of Positional Restraint on Oxygen Saturation and Heart Rate Following Exercise, 9 Am. J. Forensic Med. Pathology 16 (1988); Donald T. Reay, et al., Positional Asphyxia During Law Enforcement Transport, 13 Am. J. Forensic Med. Pathology 90 (1992). Reay's study stated that Sudden Custody Death Syndrome was caused by the combination of (1) drug use, (2) positional asphyxia, (3) cocaine psychosis, and (4) hog-tying or carotid choke holds. The Plaintiff in Gutierrez was under the influence of drugs, and therefore, the Court found that issues of material fact existed as to whether, under the circumstances, hogtying created a substantial risk of death or serious bodily injury, thereby becoming deadly force. Id. at 446-47.

The Plaintiff argues that the officers violated her Fourth Amendment rights by hog-tying her, which she states is objectively unreasonable based on the study. The Plaintiff also asserts that the Defendant failed to monitor Loggins. Furthermore, the Plaintiff relies on the study which was allegedly sent to all police departments across the nation, demonstrating that hog-tying had been linked to several deaths. However, no evidence exists that the Defendant received such a notice. Moreover, the Plaintiff retained the expert, Dr. Werner U. Spitz, who

opined that the manner of death was due to positional asphyxia, not hyperthermia. He bases most of his findings on Dr. Reay's above cited article.

The Defendant counters this argument with a study conducted by Tom Neuman, et al., who convinced Reay to concede that hog-tying was "physiologically neutral" in the case of Price v. San Diego, 990 F. Supp. 1230, 1238 (S.D. Cal. 1998). Notably, the Neuman study was not a part of the record in Gutierrez; however, it is part of the record in this case. See Gutierrez, 139 F.3d at 451.

Plaintiff's expert Dr. Spitz generally opines that the hogtie restraint caused the death of the Plaintiff. However, Dr. Spitz conceded that the hogtie restraint was physiologically neutral.

Unlike the Plaintiff in Gutierrez, it is uncontested that Loggins was not under the influence of any drugs and therefore, the San Diego Study, even assuming it is valid, is inapplicable to this case. See Gutierrez, 139 F.3d at 446-47. Without these two elements, the study is inapplicable. Thus, the Court is of the opinion that any discussion of the positional asphyxia element is unnecessary. Notwithstanding the above analysis, this Court agrees with the Fifth Circuit in noting that Reay's conclusions have been called into serious question by Dr. Tom Neuman in Price. Id. at 451. In sum, Plaintiff has failed to create a genuine issue of material fact that hogtying, in these circumstances, creates a substantial risk of death or serious bodily harm, thereby constituting excessive or deadly force.

Dr. Spitz further states that since the Plaintiff was morbidly obese, that "all that fat pushed up against the diaphragm that the diaphragm will be immobilized." Dr. Spitz could not state any article, treatise, or medical journal that he relied on to make this conclusion other than Reay's article. Notably, in the Price case, the Court stated that Dr. Reay, the very author of the article relied upon by Dr. Spitz, "admitted that he has no empirical evidence that suggests that

lying prone with a large belly can impair breathing to a significant extent." Price, 990 F. Supp. at 1238. Therefore, the Court in Price concluded that the testimony was wholly speculative. Thus, this Court similarly holds that the Plaintiff, in this case, did not bring forth evidence to create a genuine issue of material fact that the Plaintiff's obesity coupled with the hogtie restraint constituted excessive force.

As noted above, an excessive force claim is as follows: "(1) an injury (2) which resulted directly and only from the use of force that was clearly excessive to the need and (3) the force used was objectively unreasonable." See Hathaway, 507 F.3d at 320. The Plaintiff has proved that an injury occurred since the Plaintiff did die. Nevertheless, the Plaintiff has not proved that the injury resulted directly and only from the use of force that was clearly excessive; thus, no causation existed. As stated above, the Plaintiff has not offered any evidence that the force was excessive or "clearly excessive." Loggins assaulted a police officer with a flashlight, which according to Sheriff Gray is a level 4 offense. The Sheriff testified that Officer Spellman would have been authorized for the "use of deadly force up to a level 4." However, it is undisputed that the officer did not reciprocate with deadly force and only used what he deemed necessary to restrain the Plaintiff.

Further, the Court finds that, given the totality of the circumstances, the force used was necessary. Moreover, in accordance with case law, based on the analysis above, and looking at the totality of the circumstances, the Plaintiff has not proved that the force used was objectively unreasonable. See Garrett v. Athens-Clarke County, 378 F.3d 1274, 1279-81 (11th Cir. 2004); Gutierrez, 139 F.3d at 446-52, Price, 900 F. Supp. at 1237-40; See Hathaway, 507 F.3d at 320-22.

**Failure to Monitor**

Plaintiff further asserts that her constitutional rights were violated by Jones failing to monitor the Plaintiff as she was transported. It is undisputed that Jones monitored her during the ride and that she was moving upon arrival at the Police station. Further, Jones stated,

> About half way between Winona and Grenada, or a third of the way through the trip, I observed Ms. Loggins in the back seat finally quiet down. Though she was finally quiet, I did observe her moving through the entire ride. I monitored the arrestee during the entire trip observing movement and listening to her shouts. When I arrived at the Grenada County Jail, I observed the arrestee was still apparently moving. I went to the security door and asked for the assistance from the jailers at moving Ms. Loggins from the patrol car to the jail. A correction officer came to the vehicle, the female correction officer observed that Ms. Loggins was unresponsive.

(Jones Aff. ¶¶ 4-6). Thus, Plaintiff's argument must hinge on whether Jones failed to monitor her in the short period that Jones went to the security door to seek assistance. Taking the evidence in the light most favorable to the Plaintiff, the Court estimates that the time could not have been more than a few minutes.

Under failure to monitor claims, it is unclear whether the Court should employ a Fourth Amendment analysis or a Fourteenth Amendment analysis in a case where the arrestee has not been formally booked nor awaiting trial for a significant period of time. See Gutierrez, 139 F.3d at 452; but see Wagner v. Bay City, Tex., 227 F.3d 316, 324-25 (5th Cir. 2000). The line is not always clear as to when an arrest ends and a pretrial detainment starts. See Stephens v. City of Butler, 509 F. Supp. 2d 1098, 1108 (S.D. Ala. 2007) (analyzing the unsettled law of the Fourth Amendment arrest versus the Fourteenth Amendment pretrial detainment). However, the Court will arrive at the same conclusion with each analysis.

In Gutierrez, the Court explained that the excessive force claims fell under the Fourth Amendment and that the Fourteenth Amendment is not applicable until "after the incidents of arrest are completed, after the plaintiff has been released from the arresting officer's custody, and

after the plaintiff has been in detention awaiting trial for a significant period of time." Gutierrez, 139 F.3d at 452 (quoting Valencia v. Wiggins, 981 F.2d 1440, 1445 (5th Cir. 1993)). As mentioned *supra*, Gutierrez involved an arrestee who was under the influence of drugs, was hogtied in the back of a police car, and subsequently died during transport. Id. However, the Court generally discussed the Plaintiff's alleged Fourteenth Amendment claim and not failure to monitor specifically. Id. If the Fourth Amendment analysis is used, then the reasonableness standard applies or essentially becomes an excessive force analysis.

Similar to the analysis *supra*, this Court is of the opinion that the Plaintiff has failed to create a genuine issue of material fact that leaving Loggins in the car for only a few minutes is objectively unreasonable and amounts to excessive force. Objectively speaking and based on the above, an officer would not be unreasonable in leaving an arrestee face down in the back of the car for only a few minutes.

Although Wagner is not a hogtying case, the Court finds it more applicable to the case *sub judice*. See Wagner, 227 F.3d at 316-19. In Wagner, an arrestee was handcuffed face down in the back of a police car, and upon arrival to the police station, the officers realized the arrestee was unconscious. Id. The arrestee later died. Id. The Plaintiff brought the claim alleging, among other claims, the failure to provide medical care on the way to the jail. As to this allegation, the Court finds the allegation in Wagner more comparable than Gutierrez. Compare Wagner, 227 F.3d at 324-25 (applying a Fourteenth Amendment analysis); with Gutierrez, 139 F.3d at 452 (applying a Fourth Amendment analysis).

If the Fourteenth Amendment analysis is applied, then the Court will evaluate the claim under substantive due process's deliberate indifference standard. Deliberate indifference requires that the official have subjective knowledge of the risk of harm. Wagner, 227 F.3d at

324; (quoting Hare v. City of Corinth, 74 F.3d 633, 639 (5th Cir. 1996)). The Court finds that Jones did not have subjective knowledge of any risk of harm by leaving the Plaintiff hogtied and face down in the back of a police car for only a few minutes. Thus, this conduct does not amount to deliberate indifference.

Applying either analysis, Plaintiff has failed to create a genuine issue of material fact as to her failure to monitor claim.

**Policy or Custom**

As stated *supra*, a municipality, such as Carroll County, will be held liable if the Plaintiff alleges a violation of constitutionally protected rights inflicted pursuant to an official policy or custom. McKinney, 309 F.3d at 313. This Court held above that, as a matter of law, the Defendant did not violate the Plaintiff's Fourth Amendment right to be free from excessive force. Therefore, Plaintiff's claim fails and the case must be dismissed. However, even if the Plaintiff had sufficiently pled a constitutional violation, this case would be dismissed because Plaintiff has not proved a custom or policy, the failure to implement such a policy, or a sufficient failure to train claim. The Court is of the opinion that the Plaintiff has failed to point to any custom, policy, practice, or even another instance of hogtying arrestees.

As noted above, "a single decision may create municipal liability, if that decision were made by a final policymaker for that activity." Brooks, 84 F.3d at 165. "Sheriffs in Mississippi are final policymakers with respect to all law enforcement decisions made within their counties." Id. at 165 (quoting Huddleston v. Shirley, 787 F. Supp. 109, 112 (N.D. Miss. 1992)). The Plaintiff initially concedes that Sheriff Donald Gray was the final policymaker at the time of the incident. However, Plaintiff avers that the Chief Deputy can act as the *final* policy maker, thereby creating a "single act by a final policymaker" situation. This argument must fail. Case

law clearly states for a decision or act to be binding on the municipality, it must be made or performed by the final policy maker. Pembaur v. Cincinnati, 475 U.S. 469, 483, 106 S. Ct. 1292, 89 L. Ed. 2d 452 (1986) (plurality opinion) (holding that the decision maker must possess final authority to establish municipal policy with respect to the action ordered.) In the case *sub judice*, Sheriff Donald Gray did not authorize the decision, and, under Monell, the Sheriff cannot be held liable under respondeat superior. Monell, 436 U.S. at 691.

Moreover, the Plaintiff points out that in certain instances, a single act by a subordinate can bind the final policymaker if the superior can "ratify" the decision based on the limited exception in Pembaur, 475 U.S. at 483, 106 S. Ct. 1292. However, the Supreme Court of the United States held that "[s]imply going along with discretionary decisions made by one's subordinates, however, is not a delegation to them of the authority to make policy." City of St. Louis v. Praprotnik, 485 U.S. 112, 130, 108 S. Ct. 915, 99 L. Ed. 2d 107 (1988). Furthermore, the Supreme Court stated that it would be a different matter if the decision by the subordinate "was cast in the form of a policy statement and expressly approved by the supervising policymaker." Id. Plaintiff takes this language out of context and attempts to create a respondeat superior theory out of ratification. The Court is of the opinion that the ratification theory exists in situations where a subordinate's unconstitutional acts have become customary and tolerated by the final policymakers.

Also, the Fifth Circuit Court of Appeals further stated that "ratification of a first arrest was important only insofar as it constituted a policy pursuant to which a second unconstitutional arrest was made." Bowen, 669 F.2d at 989 n.14. Alternatively, the ratification theory impliedly should be applied to situations where a policymaker approves of the conduct and a subordinate later makes a decision based on that conduct.

13

These are not the facts here. In a deposition almost two years after the incident, Sheriff Gray merely stated that he did not have a problem with how Spellman handled the scene. This statement (in a deposition well after the incident) should not be considered ratification. Even assuming a violation, the simple act of ratification (in a deposition well after the incident) did not cause the violation. Granger v. Slade, 361 F. Supp. 2d 588, 599 n.9 (S.D. Miss. 2005); Milam v. City of San Antonio, 113 Fed. Appx. 622, 627 (5th Cir. 2004); Bowen v. Watkins, 669 F.2d 979, 988 (5th Cir. 1982). Allowing Plaintiff's claims to survive based on the ratification argument would certainly cause the exception to swallow the rule.

**Failure to Train**

The Defendant cannot be held liable on a failure to train theory absent finding a constitutional violation existed. However, out of caution, the Court discusses here Plaintiff's failure to train claim in detail. In order to establish a failure to train or supervise, the Plaintiff must prove "1) the supervisor either failed to supervise or train the subordinate official; 2) a causal link exists between the failure to train or supervise and the violation of the plaintiff's rights; and 3) the failure to train or supervise amounts to deliberate indifference." Estate of Davis v. City of North Richland Hills, 406 F.3d 375, 381 (5th Cir. 2005). To prove deliberate indifference, the Plaintiff must demonstrate that a pattern of violations and the lack of training is "obvious and obviously likely" to result in a constitutional violation. Further, the plaintiff must prove the failure to train by the governmental entity reflects a "deliberate" or "conscious" choice to endanger constitutional rights. City of Canton Ohio v. Harris, 489 U.S. 378, 109 S. Ct. 1197, 103 L. Ed. 2d 412 (1989).

Proof of more than a single instance in failure to train cases is normally required. Thompson v. Upshur County, 245 F.3d 447, 459 (5th Cir. 2001). In sum, a pattern must be

14

proven. Cousin v. Small, 325 F.3d 627, 637 (5th Cir. 2003). Plaintiff has failed to prove more than a single instance of a lack of training causing a violation. Moreover, Plaintiff has not proved any "known propensity for the improper use of force." Roberts v. City of Shreveport, 397 F.3d 287, 292 (5th Cir. 2005) (quoting Sims v. Adams, 537 F.2d 829, 832 (5th Cir. 1976)).

It is undisputed that the deputies each attended law enforcement academy. Moreover, Plaintiff has failed to bring forth proof that the deputies had any history of constitutional violations or complaints of excessive force. As aforementioned, not only is there no violation, but neither Sheriff Gray, nor Deputy Spellman, had known propensities for the improper use of force. Moreover, this Court finds that under these circumstances, hogtying is *not* a constitutional violation, and, thus, the conduct could not be deliberately indifferent.

Further, the Court finds that the narrowly tailored "single incident" exception does not apply in the case *sub judice*. Roberts, 397 F.3d at 295. In this limited exception, a plaintiff must show that the "highly predictable" consequence of the failure to train or supervise resulted in the precise injury alleged by the plaintiff, and that this failure to train or supervise "was 'the moving force' that had a specific causal connection to the constitutional injury." Brown v. Bryan County, Okla., 219 F.3d 450, 461 (5th Cir. 2000). Once again, it is not highly predictable that, under these circumstances, hogtying an individual can cause harm and, thus, is not the "moving force" that specifically caused the alleged constitutional injury. As previously mentioned, such a ruling would cause the exception to swallow the rule. See Thomas v. Prevou, 2008 WL 111293, *7 (S.D. Miss. 2008).

In sum, the Plaintiff has failed to present evidence which raises a genuine issue of material fact that the hogtie restraint caused a constitutional violation on the Plaintiff, or that Sheriff Gray inadequately trained his deputies about the dangers of hogtying, since, under these

circumstances, the hogtie restraint is not a constitutional violation. Furthermore, since the Plaintiff has failed to prove any dangers of hogtying under these circumstances, the Sheriff cannot be held liable for being deliberately indifferent to a nonexistent risk. See Price, 990 F. Supp. at 1246.

## *CONCLUSION*

In these circumstances, Plaintiff has failed to create a genuine issue of material fact that hogtying creates a substantial risk of death or serious bodily injury amounting to deadly or excessive force. While Plaintiff's death is very unfortunate, the Court, taking the evidence in the light most favorable to the Plaintiff, is of the opinion that Defendant did not violate Plaintiff's constitutional right to be free from unreasonable seizures, i.e. excessive force. Even assuming a constitutional violation had occurred, Plaintiff failed to bring forth evidence of a policy or custom of hogtying that would uncloak the Defendant of its qualified immunity defense. For the same reasons, Plaintiff's failure to train argument must fail. Lastly, Plaintiff's failure to monitor claim must also fail given that leaving the Plaintiff in the car, face down, for only a few minutes does not amount to objective unreasonableness nor deliberate indifference.

In sum, Defendant Carroll County, Mississippi's, Motion for Summary Judgment is **GRANTED**. Accordingly, the case is **DISMISSED**.

A separate order shall issue in accordance with this opinion.

So **ORDERED**, this the 13th day of May, 2008.

**/s/ Sharion Aycock**  
**U.S. DISTRICT COURT JUDGE**